FILED
United States Court of Appeals
Tenth Circuit

March 24, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

IVAN G. CARNEY,

      Defendant - Appellant.

No. 07-3207
(D.C. No. 04-CR-10023-MLB)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **LUCERO, HOLLOWAY** and **GORSUCH**, Circuit Judges.

This appeal is from an order revoking defendant's supervised release and ordering him imprisoned for an additional nine months.

**I**

Ivan G. Carney had been convicted on two counts of tax evasion and had served approximately 20 months of his 21-month term of imprisonment, when he was placed on supervised release on August 23, 2006. His sentence had included a fine

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P.32.1 and 10th Cir. R. 32.1.

of $50,000, which was to be paid within 60 days of his release from imprisonment. In addition to the standard conditions applicable to all persons on supervised release, Mr. Carney was subject to some special conditions. He was required to file truthful federal income tax returns for the years 2000 through 2005 and to cooperate with the IRS in determining his tax liability. Upon Carney's release, a probation officer had mistakenly told him that he could pay his fine in installments of $100 per month. In January 2007, the probation officer told Carney that he had exceeded his authority in approving the installment payment plan and that Carney was required to pay the fine in full.

On March 6, 2007, the probation officer initiated the proceedings that led to the revocation order by filing a petition in the district court. The probation officer alleged two violations of the conditions of supervised release: that Carney had failed to appear for a scheduled interview with an IRS agent in violation of the condition that he cooperate with the IRS, and that he had failed to pay the fine of $50,000, having reduced the balance only to $49,125.

The district court held three revocation hearings. The first was held on April 30, 2007.

IRS revenue officer Joanie Broadbent was assigned Mr. Carney's case. About two months after his release from prison, on October 26, 2006, she had sent him a letter requesting that he contact her to set up a meeting regarding his unfiled returns.

This letter listed specific documents that Mr. Carney needed to bring to the meeting. Eventually (after six or seven weeks) a meeting was held, but Carney did not have the requested records. Mr. Carney told Broadbent that the records had been destroyed in a fire at his home that had occurred in July 2004. Carney did not provide any records for the more than two years after the fire.[1]

Ms. Broadbent served a formal summons on Carney requiring him to produce records on January 22, 2007. Carney failed to appear. In an earlier telephone conversation, he had told Ms. Broadbent that he had retained Gloria Edwards to represent him under a power of attorney. But Carney never provided records to Ms. Edwards to enable her to assist with his taxes.

Ms. Broadbent began an investigation of Carney's finances. She discovered a UCC financing statement filed April 11, 2006, which identified eleven vehicles (including five limousines and three classic sports cars) in which Carney claimed an ownership interest. At the revocation hearing, Carney denied present ownership of these cars. The IRS also obtained pictures of several automobiles, boats, engines and tools. At the hearing, Carney admitted he had owned these assets at one time but said he did not know what had happened to them. The government also proffered evidence that Carney had received $133,000 in insurance proceeds for the fire loss

---

[1]Mr. Carney testified that he kept his business records at his office, not at the home that was burned.

to his home and that at his request the check was re-issued in the name of Barbara Evans instead of in his name.

At the conclusion of the first hearing, the judge set a second hearing for June 4, 2007, and instructed Carney to "make a lot more progress dealing with the IRS," to locate copies of records he claimed had been destroyed by fire, and to pay the fine. Carney later asked for the second hearing to be postponed to July 2 so that he could retain counsel, and the court agreed.

At the July 2 hearing, Carney had not filed the tax returns and had not paid the fine. The judge gave him two more weeks. The final hearing was held July 16, 2007. At this hearing, Carney requested more time to pursue litigation in the Tax Court. Carney also said that he had filed his 2006 tax return, that he did not have the money to pay the fine and that he was still trying to raise the funds.

The district court found that Carney had failed to show that was unable to pay the fine because he had not explained what had happened to his assets; that he had knowingly failed to pay his fine; that due to Carney's failure to make a bona fide effort to pay the fine, as well as the nature of the offense and Carney's characteristics, there was no alternative to further imprisonment; and that Carney had not taken steps to comply with the order to file his past due tax returns and to cooperate with the IRS.

## II

Mr. Carney filed a timely notice of appeal from the district court's revocation order. We therefore have jurisdiction under 28 U.S.C. § 1291. We review the order of revocation of supervised release for abuse of discretion. *See United States v. McAfee*, 998 F.2d 835, 837 (10th Cir. 1993). Of course we review underlying findings of fact only for clear error, deferring to the district court's resolution of questions of credibility.

Mr. Carney first argues that the evidence was insufficient to prove that he had willfully violated the conditions of his supervised release. As for the first ground for revocation, we begin with the proposition that, as Mr. Carney conceded at oral argument, the burden of proof was on him to show that he was unable to pay the fine. *See United States v. Bullard*, 16 F.3d 1110, 1114 (10th Cir. 1994); USSG § 5E1.2(a). Mr. Carney did not challenge the imposition of the fine based on inability to pay on direct appeal. But the district court did not indicate that Mr. Carney was precluded by *res judicata* from showing inability to pay. Instead, the judge found that Carney had assets available and that he had not made a bona fide effort to pay the fine. We see no error in these findings.

As recited *supra*, the evidence showed that defendant had substantial assets in the recent past, if not at the time of the hearing. The government was unable to show what had happened to the assets, but the evidence was clearly sufficient to

support the inference that defendant had concealed or transferred the assets to avoid their application to the fine. The district court found Carney's professed complete inability to explain what had happened to the assets to be utterly incredible.

Similarly, we find no error in the district judge's finding that Carney had failed to file his past-due income tax returns and had failed to cooperate with the IRS. It is undisputed that the returns had not been filed. Carney asserts that he had made efforts to retrieve records to enable him to prepare his returns, but the judge clearly viewed his efforts as woefully inadequate. Not only had Carney apparently delayed unreasonably in trying to replace or reconstruct records allegedly lost in the 2004 fire at his home, he had provided no records for periods after the fire, nor had he offered any explanation for his failure to produce records that had been kept at his office.

Thus, we conclude that the district judge did not err in finding that Mr. Carney had willfully violated the conditions of his supervised release.

**B**

Mr. Carney's second contention on appeal is that the district judge failed to give adequate consideration to alternatives to incarceration. The district court was specifically granted the authority to revoke Mr. Carney's supervised release by statute, which provides that when a person fails to comply with the conditions of his supervised release, the court may

(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, . . . .

18 U.S.C. § 3583(e)(3).

Another statute, which addresses failures to pay fine or restitution generally, also provides authority for the district court's revocation order:

(a)(1) Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may, pursuant to section 3565, revoke probation or a term of supervised release, modify the terms or conditions of probation or a term of supervised release, resentence a defendant pursuant to section 3614, hold the defendant in contempt of court, enter a restraining order or injunction, order the sale of property of the defendant, accept a performance bond, enter or adjust a payment schedule, or take any other action necessary to obtain compliance with the order of a fine or restitution.

(2) *In determining what action to take, the court shall consider the defendant's employment status, earning ability, financial resources, the willfulness in failing to comply with the fine or restitution order, and any other circumstances that may have a bearing on the defendant's ability or failure to comply with the order of a fine or restitution.*

18 U.S.C. § 3613A(a) (emphasis added).

The record makes it amply clear that the district court exercised patience and attempted to avoid sending Carney back to prison. But based on his finding, which we have found to be supported by the evidence, that Carney had the means to pay his

fine (or at least a substantial part thereof), the judge was forced to the conclusion that Carney simply refused to pay the fine, notwithstanding his professions to the contrary. The court quite obviously concluded that alternatives were simply not going to be effective, and we see no error in that conclusion.

Similarly, Carney's prolonged failure to produce any documents to assist the IRS in determining his income tax liability was an easily adequate basis for the judge to conclude that no other option was likely to induce compliance with that condition of his supervised release. More than seven months after the IRS had served him with a summons for production of documents, he had produced nothing. Mr. Carney's only proposed solutions involved giving him still more time, in spite of the paucity of his efforts in the substantial amount of time that had already passed since his release.

In short, we conclude that the district court did not abuse its discretion. To the contrary, the court fully considered alternatives to incarceration and found them unlikely to be successful in achieving Mr. Carney's compliance. That decision was amply supported and justified.

## Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court


William J. Holloway, Jr.
Circuit Judge